2023 IL App (1st) 220360-U

SECOND DIVISION
June 20, 2023

No. 1-22-0360

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 CR 11273 |
| | ) | |
| PERRY HAYWARD, | ) | |
| | ) | Honorable Patrick K. Coughlin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm defendant's conviction for unlawful use of a weapon by a felon. Defendant forfeited the argument that the trial court erroneously allowed portions of his recorded statement to be played before the jury, and we decline to review the claimed error for plain error because the evidence is not closely balanced; the trial court did not err when it sentenced defendant under section 5-4.5-110 of the Unified Code of Corrections where the General Assembly clearly intended for an element of the crime to also be used to impose an extended sentence.

¶ 2    Defendant Perry Hayward was charged with unlawful use of a weapon by a felon. He was convicted in a jury trial. On appeal, defendant argues that he was unfairly prejudiced by the jury being allowed to hear certain parts of his videotaped interrogation. Defendant also argues that,

during sentencing, he was improperly subjected to a double enhancement where the same prior felony conviction was used both as an element of the offense and as the basis for imposing an extended sentence. For the following reasons, we affirm.

¶ 3                                          BACKGROUND

¶ 4      On July 13, 2018, Officer Oshay Rife, a detective for the City of Harvey police department, was on patrol when he pulled into a gas station in the area of 147th Street and Halsted. A woman in the gas station lot was shouting to Officer Rife and pointing at two individuals who were also present at the gas station standing outside of their vehicle. The woman alerted Officer Rife that the individuals were carrying firearms. When the individuals heard the woman shouting to Officer Rife, they quickly got into their vehicle. Officer Rife approached the car. There were three individuals inside the vehicle: one in the driver's seat, one in the passenger's seat, and defendant, Perry Hayward, in the back seat.

¶ 5      Officer Rife ordered the individuals to put their hands up, and he asked the individuals if they had any weapons. Defendant told Officer Rife that there were "poles in the trunk," which Officer Rife understood to mean there were guns in the trunk. Officer Rife decided not to go look in the trunk at that moment in case defendant's statement was a ploy to have the Officer look away from them. Eventually, the passenger in the front seat confessed to Officer Rife that he had a gun in his waistband. Officer Rife ordered the individuals out of the vehicle, and he searched the interior of the car. He recovered the firearm that the passenger in the front seat was carrying on his person.

¶ 6      While searching the vehicle, Officer Rife recovered a loaded Smith and Wesson revolver from the floorboard underneath the driver's seat. The gun was inches away from where defendant was sitting in the backseat, and Officer Rife concluded it would have been difficult for

the driver to access the weapon from that location but easy for defendant to access it. The firearm was situated with the handle facing the backseat and the barrel pointing forward toward the driver. Defendant and the passenger that admitted having a weapon were taken into custody and brought to the police station for processing.

¶ 7     Once at the police station, defendant agreed to be interviewed by Officer Rife. The interview was videorecorded. During the interview, defendant told Officer Rife that he was with two of his friends, Shilon and Joe, at the gas station. While there, they encountered Chaz, a person with whom Shilon had problems. Defendant stated that he and Shilon approached Chaz who had two guns on him, and Shilon took the guns away from Chaz. Defendant stated that, as they were walking back to their vehicle, they heard the lady shouting "they got guns," so they entered the vehicle and passed the guns around the car in an effort to hide them. Defendant stated that his only involvement in possessing a weapon was because someone passed a gun to him, and he placed the gun under the seat in front of him. He merely touched the gun and then kicked it under the seat.

¶ 8     Defendant stated that he had no reason to lie to Officer Rife because he "got caught with a gun before" and he had nothing to do with what was going on in this situation. Defendant insisted that he was with Shilon and Joe just to smoke weed and then someone passed him a gun, but he had nothing to do with the whole incident. Defendant clarified that none of the occupants of his vehicle had weapons when they got to the gas station, but that they came to have both weapons after taking them from Chaz.

¶ 9     After it was learned that defendant had a prior conviction for aggravated unlawful use of a weapon, he was charged with unlawful use of a weapon by a felon. Defendant proceeded to a jury trial.

¶ 10    Before the trial began, defendant filed a pretrial motion seeking to prohibit Officer Rife from testifying about the content of the statement that the woman at the gas station made to him. The trial court agreed with defendant that the content of the statement was prejudicial and not necessary to explain Officer Rife's actions, so the trial court ruled that Officer Rife could not testify that the woman told him "they got guns." The trial court ruled, however, that the Officer could testify that a woman flagged him down at the gas station as the impetus for his investigation.

¶ 11    Defendant also sought to have certain portions of his recorded interview withheld from the jury. Defendant argued that the jury should not hear his statement to Officer Rife that he had been "caught with a gun before." Defendant also argued that the jury should not hear his statement where he recounted the woman at the gas station saying, "they got guns." The trial court ruled that defendant's statements could be admitted. The trial court found that it was defendant making the statement instead of the officer and, additionally, under the rule of completeness, the statement could be admitted.

¶ 12    Following the close of evidence and arguments of the parties, the jury returned a guilty verdict. Defendant filed a posttrial motion that made only general arguments such as: defendant was not proved guilty beyond a reasonable doubt, defendant was denied due process and equal protection of the law, and the trial court erred in denying defendant's pretrial motions, among other general statements. A hearing was held on the posttrial motion, at which time defendant made more specific arguments. The trial court denied defendant's posttrial motion. Following a sentencing hearing, the trial court sentenced defendant to seven years in prison. He now appeals his conviction and sentence.

¶ 13                                    ANALYSIS

¶ 14               I. Claims Relating to Defendant's Recorded Police Interview

¶ 15    Defendant argues that the trial court erred when it denied his motion to prohibit the jury

from seeing parts of his videorecorded interview. Defendant contends that certain portions of the

video contained prejudicial statements by Officer Rife, and he contends that the video allowed

the State to introduce "other crimes" evidence. Defendant argues that both the statements of

Officer Rife and his own statements from the recording allowed evidentiary material into the trial

that conflicted with prior rulings by the trial court that such evidence would not be admitted.

¶ 16    Initially, we note a number of the statements that defendant included in this argument in

his opening brief occurred in the first several minutes of the video recording. The State points

out in its response brief, however, that the portion of the video played for the jury at trial began

at timestamp 7:18. Thus, many of the arguments made by defendant on this issue lack merit

simply because the arguments concern portions of the video that were not published to the jury.

Defendant seems to tacitly admit this error because, in his reply brief, he focuses on only the

statements made after the 7-minute mark of the video.

¶ 17    From the portion of the video that was actually published to the jury, there are two

comments by Officer Rife that defendant claims were prejudicial and should not have been

played for the jury. Officer Rife asked defendant in the interview, "[w]hy would anyone say that

you implied like you had a gun before you got back in the car?" When defendant responded that

he did not have a gun before entering the car, Rife stated that he saw defendant when he first got

out of the car, and that he could "automatically...tell there was something going on...something

had just went down." Defendant contends that these statements told the jury that he was guilty of

something more than simply touching a gun. He argues that Officer Rife's comments in the

video suggested that defendant came to the scene armed with the gun and that only Officer Rife's presence prevented more serious violence from taking place. Defendant maintains that there is a segment of the video at the end where defendant succinctly provides his version of events, and that portion of the video is all that the jury should have been permitted to see. Defendant claims that his final statement of the events would have been sufficient for the jury to get the information it needed, and that portion of the interview was untainted by any prejudicial statements by Officer Rife or defendant himself.

¶ 18     Defendant further claims that the prejudice from the comments in the video was magnified by testimony Officer Rife gave at trial. On cross-examination, defense counsel asked Officer Rife whether the Officer had spoken to the individuals in the other car and whether those individuals sought to pursue charges against defendant. The State objected to the question but, following a sidebar, defense counsel asked Officer Rife whether it was true that the individuals in the second car signed a refusal to prosecute form. Officer Rife responded that, yes, the person in the other car signed a refusal to prosecute form because that other person "stated he didn't want to be harassed in the streets." Defendant argues that Officer Rife's testimony conveyed to the jury that defendant would have been charged with other crimes if Chaz had not signed a refusal to prosecute form.

¶ 19     Defendant also argues the court erred when it allowed the jury to hear defendant's own statement that he had been caught with a gun before.  Defendant argues his statement constitutes other crimes evidence admitted for no proper purpose.

¶ 20     The State argues that defendant has forfeited these claims for review because he failed to raise the issues in a posttrial motion. The failure to raise an issue in a posttrial motion results in the forfeiture of that issue on appeal. *People v. McCarty*, 223 Ill. 2d 109, 122 (2006). In order to

preserve an issue for review, a defendant must make an objection at trial and also raise the *specific* issue in a posttrial motion. *People v. Woods*, 214 Ill. 2d 455, 470 (2005); see also *People v. Bass*, 220 Ill. App. 3d 230, 239 (1991) (to be effective in preserving an issue for appeal, a posttrial motion must set forth the claimed error with some specificity). If a defendant fails to satisfy either requirement for preserving an error, his challenge is considered forfeited on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988).

¶ 21    In his posttrial motion, defendant made general, boilerplate claims of error—defendant was not proved guilty beyond a reasonable doubt; defendant was denied due process and equal protection of the law; and the trial court erred in denying defendant's pretrial motions, among other general statements. He did not make any argument that included any facts specific to the case and did not raise any issue with regard to the videorecorded interview. Defendant argues that the claims about the video are preserved for review because, in his posttrial motion, he argued generally that the trial court erred by denying his pretrial motions.

¶ 22    Defendant argues that the statement in his posttrial motion that referenced the denial of his pretrial motions was sufficient to preserve the error for review because all that is required to preserve an issue for appellate review is that the issue is raised in a manner sufficient to alert the trial court to the error (citing *People v. Groves,* 294 Ill. App. 3d 570, 574 (1998)).

¶ 23    In *Groves*, the defendant filed a motion for new trial alleging that the trial court erred in admitting the defendant's out-of-court statements. *Groves*, 294 Ill. App. 3d at 573. On appeal, the defendant argued that he was not brought in front of a judge until four days after his arrest and this delay and the surrounding circumstances negated the voluntariness of his confession. *Id*. at 573-74. The State argued that the issue was waived because it was not specifically raised in defendant's posttrial motion. *Id*. at 574. We found the issue was properly preserved since the

defendant stated in his posttrial motion that the trial court erred in admitting his out-of-court statements. *Id*. (Citing *People v. Brown*, 150 Ill. App. 3d 535, 540–41 (1986) (specificity in a posttrial motion is sufficient when it alerts the trial judge to the error)). In contrast to *Groves*, where the defendant specifically alleged the court erred by denying a specific motion to suppress, defendant in this case did not specify any error with regards to the admission of the video statement in his posttrial motion.

¶ 24    In *People v Bass*, 220 Ill. App. 3d 230 (1991), the defendant filed a pretrial motion to quash her arrest on the grounds police did not have adequate grounds to arrest her. *Id*. at 233. The motion was denied, and defendant was later convicted. *Id*. at 234. Defendant filed a motion for a new trial arguing the court erred in denying the motion to suppress her arrest, which was denied. *Id*. at 238. On appeal, defendant argued the court erred in not quashing her arrest because the search warrant which led to her arrest was constitutionally infirm. *Id*. Defendant on appeal argued the search warrant authorized a search of the first-floor apartment, however, there was more than one apartment on the first floor. *Id*. We held that the motion for new trial alleging error in denying the motion to suppress her arrest was not sufficient to preserve the search warrant issue defendant raised on appeal and the issue was forfeited. *Id*. at 239.

¶ 25    We find defendant's case is more akin to *Bass* where we found forfeiture than *Groves* where we held the motion for new trial was sufficient to preserve defendant's arguments. In *Bass*, the defendant specifically alleged that the court erred by denying the motion to suppress her arrest, yet we held that was insufficient to preserve the issues with the search warrant. *Id*. Here, defendant was even less specific than the defendant in *Bass* when he alleged in his posttrial motion that the trial court erred by denying the pretrial motions and did not specifically allege the court allowed improper portions of defendant's interview to be shown to the jury.

¶ 26    We find that the general, unsupported allegation made by defendant in his posttrial motion that the trial court erred by denying defendant's pretrial motions is insufficient to preserve the specific errors regarding admission of the video for review because the motion did not alert the trial court to the specific issues defendant raises in this appeal. Our finding is further supported by the fact that, at the hearing on the posttrial motion, defendant raised no issue whatsoever about the video recording. The lack of any specificity in the written motion coupled with the failure to argue the issues at the hearing on the posttrial motion results in a forfeiture of the issues for appeal. *Bass*, 220 Ill. App. 3d at 239.

¶ 27    Defendant argues the evidence is closely balanced and urges us to review his claims for plain error should we find them to be forfeited. Under plain error review, we will grant relief to a defendant on otherwise-forfeited issues in either of two circumstances: " '(1) clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Phillips*, 2022 IL App (1st) 181733, ¶ 124 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 28    Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on an evidentiary error insofar as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict "may have resulted from the error and not the evidence" properly adduced at trial; or that there was a

"reasonable probability" of a different result had the evidence in question been excluded. *People v. White*, 2011 IL 109689, ¶ 133.

¶ 29    Defendant invokes the first prong of plain error and claims the evidence is closely balanced. Where a defendant alleges first-prong plain error, a court of review may first examine the record to determine whether the evidence is closely balanced before determining whether error occurred: "Where the only basis proffered for plain-error review is a claim that the evidence is closely balanced, an assessment of the impact of an alleged evidentiary error is readily made after reading the record." *Id.* at ¶ 148. "When it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred." *Id.*

¶ 30    Recounting the evidence adduced at trial, defendant concedes that "surely, this evidence was enough to convict," but he argues that the evidence was closely balanced because the State cannot show that the errors did not contribute to the verdict (citing *People v. Phillips,* 2022 IL App (1st) 181733, ¶ 163). In our review of the record, we find that the evidence is not closely balanced. In the record we have not only the testimony of the arresting officer but the videotaped statement of the defendant. In the video statement, defendant asserted that he voluntarily got into a car accompanied by a friend. Defendant was aware the friend had in his possession two guns he had just taken away from another person. After getting into the car, someone passed one of the guns to defendant which defendant took in his hands and tried to hide by placing the gun under the seat in front of him. He then kicked the gun under the seat in front of him.

¶ 31    Defendant argued at trial he only reacted when someone handed an object to him and did not intend to possess a gun. However, defendant admitted he and the other passengers attempted to hide the guns. Defendant took possession of the weapon when it was handed to him and

defendant put the gun in an area where he had ready access to it, and according to the officer, defendant had better access to the gun than the other passengers in the car. The arresting officer testified he found the gun in the place where defendant said he kicked it. Defendant's statement is essentially an admission to possessing a firearm, and since defendant had a prior felony conviction it was a confession to the offense for which he was convicted.

¶ 32    We conclude the evidence against defendant is such that there is no reasonable probability that a jury would acquit the defendant if the statements in question were not heard by the jury. Therefore, he cannot show prejudice for purposes of plain-error review. *People v. Sims*, 192 Ill. 2d 592, 628 (2000) ("[a]ssuming, without deciding," there was error, this court found "no plain error" because there was "no reasonable probability that the jury would have acquitted the defendant"); see also *People v. Keene*, 169 Ill. 2d 1, 16–19 (1995). Therefore, we honor defendant's forfeiture of his arguments concerning errors in admitting the video recordings.

¶ 33                    II. Defendant's Claim of Improper Double Enhancement

¶ 34    To support defendant's conviction for unlawful use of a weapon by a felon, the State relied on defendant's prior conviction for aggravated unlawful use of a weapon as proof of the prior felony element of the offense. At sentencing, the same prior conviction was used to determine that defendant qualified for an extended-term sentence under the sentencing guidelines for individuals with prior felony firearm-related convictions (see 730 ILCS 5/5-4.5-110(c)(1) (West 2020)). Defendant argues that, because the same prior conviction was used both to establish an element of the offense and to subject him to a higher sentencing range, his sentence was a product of an impermissible double enhancement.

¶ 35    Defendant acknowledges that he failed to preserve this issue for review, but he urges us to review his claim under the plain error standard. Defendant alternatively argues that he should be able to proceed on the issue based on a claim of ineffective assistance of counsel. We agree that the claim is reviewable for second-prong plain error review, and we will address defendant's claim on the merits. See *People v. Baaree*, 315 Ill. App. 3d 1049, 1050 (2007) (a claim that the trial court imposed a sentence unauthorized by law may be addressed under the second prong of plain error review).

¶ 36    Section 5-4.5-110 of the Unified Code of Corrections provides for an extended sentence for repeat felony firearm offenses.

> "When a person is convicted of unlawful use or possession of a weapon by a
> felon, when the weapon is a firearm, and that person has been previously
> convicted of a qualifying predicate offense, the person shall be sentenced to a
> term of imprisonment within the sentencing range of not less than 7 years and not
> more than 14 years, unless the court finds that a departure from the sentencing
> guidelines under this paragraph is warranted under subsection (d) of this Section."
> 730 ILCS 5/5-4.5-110(c)(1) (West 2020).

Defendant argues that he was improperly subjected to a double enhancement where his prior conviction for aggravated unlawful use of a weapon was used both as the qualifying offense to support his conviction for unlawful use of a weapon by a felon and as the basis for applying the extended sentencing scheme set forth in section 5-4.5-110 of the Unified Code of Corrections.

¶ 37    "There is a general prohibition against the use of a single factor both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed." *People v. Gonzalez*, 151 Ill. 2d 79, 83–84 (1992).

(Emphasis in original). The reason for prohibiting a double enhancement is that "it is assumed that the legislature, in determining the appropriate range of punishment for a criminal offense, necessarily took into account the factors inherent in the offense." *Id*. at 84. Thus, it would be improper to use one of the same factors that make up the offense also as the basis for imposing a harsher penalty. *Id*. An exception to the prohibition against double enhancement occurs where the legislature clearly intends to enhance the penalty based on some aspect of the crime and that intention is clearly expressed. *People v. Powell*, 2012 IL App (1st) 102363, ¶ 8.

¶ 38    To support his claim that he was improperly subjected to a double enhancement, defendant relies on our decisions in *People v. Bahena*, 296 Ill. App. 3d 67, 69-70 (1998) and *People v. Owens*, 377 Ill. App. 3d 302, 304 (2007). In both *Bahena* and *Owens* we found an improper double enhancement where a defendant was charged with a firearm offense and a previous conviction was used as an element of the offense and as enhancement for the punishment. Both *Bahena* and *Owens*, however, were decided before the passing of section 5-4.5-110 and do not deal with the statute at issue in this case. So, while the cases are helpful to establish the general principles of prohibited double enhancements, they do not speak to whether section 5-4.5-110 clearly expresses a legislative intent to allow for the enhancement of a penalty based on an element of the crime. We find that the legislation clearly intends for such an enhancement.

¶ 39    The entire purpose of section 5-4.5-110 of the Unified Code of Corrections is to enhance penalties for individuals with prior felony firearm offenses so that a second such offense triggers a more severe sentencing structure than was previously in place. The title of the statute and the plain language used therein provide strong indications that the general assembly intended a prior felony firearm conviction to be used as part of the offense *and* as qualification for punishment.

See 730 ILCS 5/5-4.5-110(b-c) (West 2020). The statute provides that "[w]hen a person is convicted of unlawful use or possession of a weapon by a felon, when the weapon is a firearm, and that person has been previously convicted of a qualifying predicate offense" the person is subject to extended sentencing. The statute makes clear that "after being previously convicted of a qualifying predicate offense the person shall be subject to the sentencing guidelines under this Section." *Id.* The language clearly indicates that the prior offense is both part of the current offense while also serving as the trigger for an extended sentence.

¶ 40    Moreover, when the General Assembly passed the Safe Neighborhoods Reform Act which encompasses section 5-4.5-110, it expressly amended the then-existing sentencing schemes for particular firearm offenses. See *e.g.*, 720 ILCS 5/24-1.1(e) (West 2020); 720 ILCS 5/24-1.6(d)(1) (West 2020). For the offense of unlawful use of a weapon by a felon, the general assembly amended the sentencing provision so that it now states "[a] second or subsequent violation of this Section shall be a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years, *except as provided for in Section 5-4.5-110 of the Unified Code of Corrections.*" 720 ILCS 5/24-1.1(e) (West 2020) (emphasis added). The italicized portion of the above quotation was added to the unlawful use of a weapon by a felon statute by the General Assembly when it passed the Safe Neighborhoods Reform Act (see P.A. 100-3, § 35, eff. Jan. 1, 2018), and it clearly expresses a legislative intent to allow a prior conviction to be used both as part of the offense and as a basis for the imposition of the extended sentencing scheme.

¶ 41    We previously examined the issue of enhanced sentences in connection with section 5-4.5-110 of the Unified Code of Corrections in *People v. Richards*, 2021 IL App (1st) 192154. In *Richards*, we observed that during Senate and House debates, legislators discussed the bill's

"new sentencing structure for second-time gun offenders." *Id*. at ¶ 26 (citing 100th Ill. Gen. Assem., House Proceedings, May 29, 2017, at 92 (statements of Representative Durkin) (quotation in original)). We observed that supporters of the bill asserted that many people charged with violent offenses had prior convictions for firearm offenses and that the people who possessed firearms after such convictions were responsible for most violent crime, especially in the City of Chicago. *Id.* Thus, in the view of those who supported the bill, increasing the penalty for persons found to possess firearms with prior convictions would reduce violent crime. *Id.* Thus, we concluded in *Richards*, "the plain language of the statute indicates the legislature intended to impose the elevated sentencing guidelines on offenders with prior convictions for any of the listed offenses." *Id*. at ¶ 28.

¶ 42     As we discussed in *Richards*, the law was aimed at "second-time gun offenders." *Id*. at ¶¶ 26-27. For the offense of unlawful use of a weapon by a felon, then, the General Assembly had to have intended that the prior qualifying offense would be part of the new offense and would also subject the offender to the extended sentencing term at the same time.

¶ 43     We find a clear intention by the General Assembly to increase the penalty for unlawful use of a weapon by a felon based on an aspect of the crime. Therefore, the matter falls within the exception to the general prohibition against double enhancement. See *People v. Powell*, 2012 IL App (1st) 102363, ¶ 8. Because the trial court did not err when it sentenced defendant under section 5-4.5-110 of the Unified Code of Corrections, defendant is not entitled to plain error relief on this basis, and he similarly is not entitled to relief for ineffective assistance of counsel based on his attorney's failure to raise the issue.

¶ 44                                    CONCLUSION

¶ 45     Accordingly, we affirm.

¶ 46    Affirmed.