2023 IL App (1st) 211557

No. 1-21-1557

Sixth Division

August 25, 2023

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| v. | ) | |
| | ) | No. 19 CR 15185 |
| TYWAUN DONALD, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thaddeus L. Wilson, |
| | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Presiding Justice Mikva concurred in the judgment and opinion.
Justice C.A. Walker specially concurred, with opinion.

**OPINION**

¶ 1    Tywaun Donald was convicted of unlawful use of a weapon by a felon and sentenced to a term of 7½ years' imprisonment. On appeal, he argues that the evidence was insufficient to sustain his conviction. He also challenges the length of his sentence and argues that the trial court engaged in an impermissible double enhancement of his sentence when it used his prior conviction for aggravated unlawful use of a weapon both as an element of the offense and to impose a higher sentence under section 5-4.5-110(c)(1) of the Unified Code of Corrections

(Code of Corrections) (730 ILCS 5/5-4.5-110(c)(1) (West 2018)). We find that the evidence presented was sufficient to support Tywaun's (we refer to the defendant by his first name to distinguish him from his brother, Tyrone Donald) conviction and that the trial court's use of Tywaun's prior conviction to sentence him under section 5-4.5-110 does not constitute an impermissible "double enhancement."

¶ 2                                    I. BACKGROUND

¶ 3       Tywaun Donald was charged with four counts of unlawful possession of a weapon by a felon (UUWF). At the time of his arrest, he had a previous conviction for aggravated unlawful use of a weapon (AUUW) and was on parole. Counts I and II of the indictment alleged that Tywaun knowingly possessed in his abode a firearm or firearm ammunition after having previously been convicted of the felony offense of AUUW. Both counts also stated that the State would ask the court to sentence Tywaun as a Class 2 offender under section 24-1.1(e) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.1(e) (West 2018)) because he was on Monitored Supervised Release (MSR) at the time of the offense. Counts III and IV alleged that Tywaun knowingly possessed in his abode a firearm or firearm ammunition after having previously been convicted of AUUW. These counts did not reference section 24-1.1(e). The State proceeded to trial only on count III.

¶ 4       Before trial, the State offered Tywaun a sentence of three years. The court explained to Tywaun that the "sentencing range of 7 to 14 years is a presumptive range" and that it "could only go to the range of 3 to 7 years if [it] were to find that one or more statutory enumerated factors existed to help with the minimum sentence." Tywaun stated that he understood, rejected the State's offer, and proceeded to a bench trial.

¶ 5    Two officers who executed a search of Tywaun's home testified at trial: Illinois Department of Corrections (IDOC) agent Christina Samuelson and Chicago police officer Kevin Lombard. Samuelson testified that on October 9, 2019, at approximately 7 a.m., she and several IDOC agents and police officers went to 6632 South Oakley Avenue in Chicago to conduct a parole compliance check on Tywaun and his brother, Tyrone. The purpose of a parole compliance check is to monitor individuals paroled through IDOC to make sure they are living where they are supposed to be and to confirm they do not have any contraband such as weapons or drugs. In this instance, the officers knew there was a warrant out for Tywaun's arrest, but they did not know the basis for the warrant. We note that the arrest report indicates that Tywaun was the subject of an outstanding bond forfeiture warrant.

¶ 6    The officers knocked on the door of Tywaun's residence and asked the woman who answered for Tywaun and Tyrone, who then directed them to the basement. Samuelson went to the basement, knocked on the door she saw to her left, announced "parole," and opened the door. Inside, she found Tywaun sleeping in bed next to a woman. Samuelson yelled "parole agent," said she was doing a compliance check, and told Tywaun and the woman to leave the room. Officers "pat-searched" Tywaun and placed him in handcuffs due to the warrant for his arrest, and Samuelson then searched the room. First, she searched a closet and found "male clothing and shoes that looked to be the size of Tywaun['s]" and an envelope bearing Tywaun's name and IDOC number. Samuelson then searched the dresser that was located just a few feet from the bed, on the side closest to where Tywaun had been sleeping. On top of the dresser, Samuelson found another document bearing Tywaun's name and IDOC number. When she opened the top left dresser drawer, she saw a black handgun with an extended clip sitting on top of some

clothing. Samuelson could not identify the clothing, but believed it to be small items such as underwear or socks. She acknowledged that women's clothing could "possibly" have been in the drawer as well, but testified that most of the clothing looked like it belonged to a male. Samuelson searched the other dresser drawers as well and saw what appeared to be male clothing. Samuelson then told Lombard about the gun. Samuelson did not touch the gun.

¶ 7    Samuelson testified that she also found an electronic monitoring (EM) box in the room. She explained that when someone in IDOC custody is on EM, they wear an ankle bracelet and receive a box like that. Samuelson said she believed the box was registered to Tywaun because he was wearing an ankle monitor when he was detained and "wasn't out of range" of the box when they were there. She acknowledged that she did not search the rest of the house to look for additional EM boxes, but confirmed that Tywaun was the only person living in the house who was on EM at the time.

¶ 8    Lombard testified that he went into the basement bedroom after Samuelson called to him. Samuelson pointed him to an open dresser, where he saw a semiautomatic handgun with an extended magazine. Lombard recovered the gun and then inventoried it. He acknowledged that he did not see an EM box in the room but testified that he did not know what an EM box looked like.

¶ 9    The parties stipulated that Tywaun had a previous conviction under case No. 16-CR-11949-02 for AUUW, and the State rested. The defense moved for a directed verdict, but the trial court denied its motion.

¶ 10    The defense presented Tywaun's mother, Thea Booze, as their only witness. Booze testified that on October 9, 2019, she was living at 6632 South Oakley Avenue with her middle

daughter, her youngest daughter, her two grandchildren, and her sons Tyrone and Tywaun. The house had five bedrooms. Booze testified that her bedroom and her daughter's bedroom were on the first floor, and Tyrone, her grandkids, and her youngest daughter occupied the bedrooms in the basement. She testified that Tywaun did not have his own bedroom, kept his belongings in bags in her room, and slept wherever there was a bed available. Sometimes he would sleep in Booze's room and other times he would sleep in one of the basement bedrooms. On the morning of Tywaun's arrest, Booze was not home, but came home after her daughter called. After she got home, Booze was told that Tywaun had been sleeping in the basement bedroom that belonged to her youngest daughter. Booze testified that her daughter's belongings, not Tywaun's, were in that room.

¶ 11    Booze also testified that the EM box for Tywaun's ankle monitor was not located in the basement as asserted by Samuelson. She said that in August 2019, the box had been installed upstairs behind the sofa so that her grandchildren would not disturb it when they ran around and played. She conceded that Tywaun was the only person in the house on EM. After her testimony, the defense rested.

¶ 12    The trial court found that when parole agents arrived at Tywaun's house around 7 a.m., they found him sleeping in a basement bedroom with his girlfriend. When they searched the bedroom, they found a gun with an extended clip in the top drawer of a dresser located only a few feet from where Tywaun had been sleeping. The parole agent saw Tywaun's IDOC personal property inventory form sitting on top of the dresser "just above" where the gun was located. The agent found additional documents with Tywaun's name on them in the bedroom, as well as what "appeared to her to be majority male clothing consistent with the size of [Tywaun], and … men's

shoes consistent with the size of [Tywaun]." The agent also saw an EM box in the room and noted that Tywaun was wearing his EM ankle bracelet. The court noted that although Tywaun's brother Tyrone was also on parole, Tywaun was the "only person out there with a box and a bracelet for that address." The court said it did not matter where the box was initially installed, because "it was in that basement bedroom, where [Tywaun] was located." The court also noted that the gun was not hidden in the drawer. After making these findings, the court concluded that the evidence established beyond a reasonable doubt that Tywaun had knowingly possessed, in his abode, a firearm, after having been previously convicted of AUUW.

¶ 13    Defense counsel timely filed a motion for a new trial, asserting that the State had failed to prove Tywuan guilty beyond a reasonable doubt. After the motion was filed, Tywaun retained new counsel who filed an amended motion for a new trial. In his amended motion, Tywaun contended that the State failed to contradict Booze's testimony regarding the layout of the house and how the bedrooms were occupied; that there was no forensic evidence connecting him to the gun or evidence confirming the location of the EM box; and that Samuelson's testimony regarding the clothing in the basement was speculative.

¶ 14    After hearing arguments on the amended motion, the court explained that it credited Samuelson's testimony that the clothing found was consistent with Tywaun's size and build and concluded that, even without the clothing, it could find that Tywaun had control over the contents of the room based on the fact that he had been found sleeping there and documents addressed to him were also found there. The court addressed the inconsistencies between Booze's testimony and that of the officers by crediting the officers' testimony over Booze's. Finally, the court concluded that the State's failure to admit the EM box into evidence or to

confirm that it belonged to Tywaun did not meaningfully change its analysis. The court denied Tywaun's amended motion for a new trial.

¶ 15    The presentence investigation report (PSI) prepared prior to sentencing showed that Tywaun had two previous adult convictions: (1) possession of a stolen motor vehicle, for which he was sentenced to three years in prison, and (2) AUUW, for which he was sentenced to one year in prison consecutive to the sentence in his other criminal matter. In aggravation, the State noted that Tywaun was on parole at the time of the offense. The State noted that "based on his conviction he would be presumptive under the statute for unlawful use of a weapon by a felon which would be 7 to 14 years."

¶ 16    Defense counsel conceded that Tywaun was subject to "presumptive sentencing because of his background," but asked the court to depart from the sentencing guidelines under section 5-4.5-110(d) of the Code of Corrections (730 ILCS 5/5-4.5-110(d) (West 2018)) due to Tywaun's age and potential for rehabilitation. She argued that "[s]ending him to prison for 7 to 14 years will do him no justice." In mitigation, several of Tywaun's friends and relatives made statements on his behalf and counsel read Tywaun's statement into the record.

¶ 17    The trial court stated that it

"considered the evidence at trial, the gravity of the offense, the presentence investigation report, the financial impact of incarceration, all evidence, information, and testimony in aggravation and mitigation, any substance abuse issues and treatment, the potential for rehabilitation, a possibility of sentencing alternatives including those to be considered under 730 ILCS 5/5-4.5-110 regarding departures from the presumptive sentencing range

***[,] the statement of defendant, and all hearsay presented deemed relevant and reliable."

After considering these factors, the court sentenced Tywaun to 7½ years in prison, noting that it "is a presumptive extended range sentence." It also sentenced Tywaun to one year of MSR.

¶ 18    After sentencing, defense counsel filed a motion to reconsider the sentence, arguing that the court "failed to take into consideration all of the mitigating factors presented; considered improper aggravating factors; improperly ordered sentencing enhancements *** and/or sentenced [Tywaun] to a term of imprisonment in excess of a term that would be considered reasonable under the facts and circumstances of the case." The court denied the motion, noting it had considered that Tywaun was on parole at the time of the offense and the seriousness in terms of "what is going on in our communities today and this weapon and the extended clip." It found that a "departure from the presumptive sentencing range is not appropriate here." Tywaun timely appealed.

¶ 19                                II. ANALYSIS

¶ 20                      A. Sufficiency of the Evidence Claim

¶ 21    On appeal, Tywaun argues that the evidence was insufficient to demonstrate his possession of the handgun found in the dresser drawer because there was no physical evidence linking him to the weapon and "little credible circumstantial evidence" that he knowingly exercised control over the contents of the bedroom and dresser. The State argues that the evidence was sufficient to meet its burden and asks us to affirm the trial court's finding.

¶ 22    When faced with a challenge to the sufficiency of the evidence, we must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The trial court, not the reviewing court, "remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Wright*, 2017 IL 119561, ¶ 70. A defendant's conviction will be overturned based on the sufficiency of the evidence only where it is "so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *Id.*

¶ 23    A person commits UUWF when he "knowingly possess[es] on our about his person or on his land or in his own abode *** any firearm or any firearm ammunition if the person has been convicted of a felony." 720 ILCS 5/24-1.1(a) (West 2018). In this case, the parties stipulated to Donald's prior felony conviction for AUUW, and agreed that Tywaun lived in the house where the gun was found. The only contested issue is whether Tywaun knowingly possessed the gun that was found in the dresser drawer.

¶ 24    Knowing possession may be actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). "Constructive possession exists where there is no actual, personal, present dominion over contraband, but defendant had knowledge of the presence of the contraband, and had control over the area where the contraband was found." *People v. Hunter*, 2013 IL 114100, ¶ 19; *People v. Davis*, 2021 IL App (3d) 180146, ¶ 72. This knowledge may be inferred from circumstantial evidence (*Brown*, 327 Ill. App. 3d at 824-25), and this evidence is "often entirely circumstantial" (internal quotation marks omitted) (*People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18). Proof of defendant's mere presence in the premises where a firearm is found is not sufficient; instead, there must be evidence that the defendant controlled the premises or the

firearm itself, which may be shown by defendant's habitation in the premises where contraband is discovered. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17; *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). "Proof of residency in the form of rent receipts, utility bills and clothing in closets is relevant to show the defendant lived on the premises and therefore controlled them." *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993); *Terrell*, 2017 IL App (1st) 142726, ¶ 19.

¶ 25    The evidence at trial established that on October 9, 2019, around 7 a.m., Agent Samuelson and other IDOC parole agents, and CPD officers, including Officer Lombard, arrived at the house where Tywaun resided to perform a parole compliance check. When Samuelson entered a basement bedroom, she found Tywaun and his girlfriend asleep in a bed. Tywaun was sleeping on the side closest to the dresser, which was positioned only a few feet from the bed. Samuelson found documents containing Tywaun's name and IDOC number on top of the dresser. When she opened the top drawer of the dresser, she saw a black firearm with an extended magazine clip sitting on top of men's socks and underwear. In the closet, Samuelson found clothing and shoes that matched Tywaun's size, as well as additional documents addressed to Tywaun with his name and IDOC number. Samuelson also found an EM box in the basement bedroom and believed it belonged to Tywaun because he was the only resident of the house on EM at that time and was not "out of range" of the box when he was arrested.

¶ 26    Although Tywaun's mother testified that the basement bedrooms belonged to her other children and the EM box had been installed upstairs, the trial court determined that the weight of the evidence demonstrated that Tywaun had sufficient control over the bedroom where he was sleeping on the morning of October 9, 2019. See *People v. Miller*, 2018 IL App (1st) 152967,

¶ 11 (the "trier of fact is not required to disregard the inferences that flow from the evidence or search out all possible explanations consistent with a defendant's innocence and raise them to a level of reasonable doubt"). Taken together, when viewed in the light most favorable to the prosecution, this evidence is sufficient to conclude that Tywaun had immediate control over the basement bedroom and thus constructive possession over the gun that was recovered from the dresser drawer. Therefore, we affirm the trial court's judgment.

¶ 27                              B. Double Enhancement Sentencing Claim

¶ 28    At Tywaun's sentencing hearing, the State contended that "based on his conviction he would be presumptive under the statute for unlawful use of a weapon by a felon which would be 7 to 14 years." Defense counsel conceded that Tywaun was subject to "presumptive sentencing because of his background" but asked the court to depart from the sentencing guidelines under section 5-4.5-110(d) of the Code of Corrections due to Tywaun's young age and his potential for rehabilitation. She argued that "[s]ending him to prison for 7 to 14 years will do him no justice." After considering the mitigating evidence presented, the court sentenced Tywaun to 7½ years in prison, noting it "is a presumptive extended range sentence." It also sentenced Tywaun to one year of MSR.

¶ 29    Defense counsel filed a motion to reconsider the sentence, arguing that the court "failed to take into consideration all of the mitigating factors presented; considered improper aggravating factors; improperly ordered sentencing enhancements *** and/or sentenced [Tywaun] to a term of imprisonment in excess of a term that would be considered reasonable under the facts and circumstances of the case." The court denied the motion, noting that it had initially considered a sentence in the 9- to 10-year range because Tywaun was on parole at the

time of the offense and because of the seriousness in terms of "what is going on in our communities today and this weapon and the extended clip." However, because it found Tywaun's mitigation "very compelling," it decided on a 7½-year sentence. It found that a "departure from the presumptive sentencing range is not appropriate here."

¶ 30    Tywaun now argues, for the first time, that the trial court improperly engaged in a "double enhancement" of his sentence when it used the same prior felony conviction of AUUW to establish both an element of his offense and to impose a higher sentence under section 5-4.5-110(c)(1) of the Code of Corrections instead of sentencing Tywaun under section 24-1.1(e) of the Criminal Code. The State argues that Tywaun forfeited this issue because he never raised it below, but that if the Court decides to reach the issue, it should affirm the sentence imposed by the trial court because no plain error occurred.

¶ 31    Because Tywaun never objected to the court's reliance on section 5-4.5-110 at sentencing and raises his double enhancement argument for the first time on appeal, he has forfeited it. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."); *People v. Jackson*, 2020 IL 124112, ¶ 81 (noting that to preserve an issue for appellate review, a defendant must object at trial and in a posttrial motion).

¶ 32    However, even though this issue was not properly preserved, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a); *People v. Herron*, 215 Ill. 2d 167, 176 (2005). Because sentencing issues are regarded as matters affecting a defendant's substantial rights, they can be reviewed for plain error. *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 42.

¶ 33    A reviewing court may address a forfeited claim under the plain error doctrine if a clear or obvious error occurred and either (1) the evidence at sentencing was closely balanced or (2) the error was so serious that it deprived the defendant of a fair sentencing hearing. *People v. Thomas*, 178 Ill. 2d 215, 251 (1997). The defendant bears the burden of persuasion under both prongs of the plain error doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). When a defendant fails to establish plain error, "the procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17 (1995). We review Tywaun's claim under the second prong of the plain error doctrine because his claim of double enhancement implicates his right to a fair sentencing hearing.

¶ 34    The trial court cannot use a factor "both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). This dual use of a single factor is often referred to as a "double enhancement." *People v. Gonzalez*, 151 Ill. 2d 79, 84 (1992); see also *People v. Phelps*, 211 Ill. 2d 1, 11 (2004) ("a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense").

¶ 35    The rule against double enhancements is "premised on the assumption that the legislature considered the factors inherent in the offense in determining the appropriate range of penalties for that offense." *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). However, "where the legislature has made clear an intention to enhance the penalty for a crime, even in a way which might constitute double-enhancement, this court will not overrule the legislature." *People v. Sharpe*, 216 Ill. 2d 481, 530 (2005); see also *People v. Owens*, 377 Ill. App. 3d 302, 304 (2007) ("A

double enhancement is not improper *** if the legislature clearly expresses an intent to allow double enhancement.").

¶ 36   Whether a statute contains an impermissible double enhancement is an issue we review *de novo*. *Phelps*, 211 Ill. 2d at 12. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. "When the statutory language is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation." *Id.*

¶ 37   To be convicted of UUWF, the statute requires a defendant to have been previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). UUWF is generally a Class 3 felony with a sentencing range of 2 to 10 years. *Id.* § 24-1.1(e). However, if the offender is on parole or MSR at the time the offense is committed, it is elevated to "a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 14 years, *except as provided for in Section 5-4.5-110 of the Unified Code of Corrections*." (Emphasis added.) *Id.* The parties agree that Tywaun's parole status at the time he committed the UUWF offense at issue here elevates his offense to a Class 2 felony.

¶ 38   Section 5-4.5-110 of the Code of Corrections is titled "Sentencing Guidelines for Individuals with Prior Felony Firearm-Related or Other Specified Convictions," and states in pertinent part, "when a person is convicted of unlawful use or possession of a weapon by a felon, when the weapon is a firearm, *** after being previously convicted of a qualifying predicate offense the person shall be subject to the sentencing guidelines under this Section." 730 ILCS 5/5-4.5-110(b) (West 2018). AUUW is a "[q]ualifying predicate offense." *Id.* § 5-4.5-110(a)(A).

Section 5-4.5-110 then states that "the person shall be sentenced to a term of imprisonment within the sentencing range of not less than 7 years and not more than 14 years, unless the court finds that a departure from the sentencing guidelines under this paragraph is warranted under subsection (d) of this Section." *Id.* § 5-4.5-110(c)(1). Subsection (d) permits the court to "depart [downward] from the sentencing guidelines" provided it "finds on the record substantial and compelling justification that the sentence within the sentencing guidelines would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and does not deprecate the seriousness of the offense." *Id.* § 5-4.5-110(d)(1).

¶ 39     We find that the plain language of sections 24-1.1 and 5-4.5-110 demonstrates that the legislature expressly intended for individuals convicted of UUWF with certain serious prior felony convictions, including AUUW, to be subject to the presumptive sentencing range of 7 to 14 years unless the court makes express findings that a downward departure is warranted. Section 5-4.5-110(b) states, without exception, that "when a person is convicted of unlawful use or possession of a weapon by a felon, *** after being previously convicted of a qualifying predicate offense the person *shall be subject to the sentencing guidelines under this Section*." (Emphasis added.) *Id.* § 5-4.5-110(b). This court has held that "generally, use of the word 'shall' indicates a mandatory obligation unless the statute indicates otherwise." *People v. Thomas*, 171 Ill. 2d 207, 222 (1996). The statute's use of the word "shall" here demonstrates that the legislature was acutely aware it was prescribing an extended term sentence for *all* individuals convicted of UUWF who had committed one of the 26 enumerated offenses listed in section 5-4.5-110(a), including AUUW, unless the court finds "substantial and compelling" justification to depart downwards under 5-4.5-110(d).

¶ 40 Therefore, because the plain language of the statute indicates that the legislature expressly mandated it, the trial court's use of Tywaun's prior AUUW conviction both as an element of his UUWF offense and as a trigger to apply the enhanced sentencing guidelines in section 5-4.5-110 did not amount to an impermissible "double enhancement." See *People v. Dycus*, 291 Ill. App. 3d 14, 17 (1997) ("Where the legislature has clearly called for this possibility, we are not at liberty to use rules of construction to revise the statute in the direction of greater lenity."). Other divisions of this court that have analyzed this statute have reached the same conclusion. See *People v. Richards*, 2021 IL App (1st) 192154, ¶ 28 (finding that "the plain language of [section 5-4.5-110] indicates the legislature intended to impose the elevated sentencing guidelines on offenders with prior convictions for any of the listed offenses"); *People v. Hayward*, 2023 IL App (1st) 220360-U, ¶ 39 (finding that "[t]he title of the statute and the plain language used *** provide strong indications that the general assembly intended a prior felony firearm conviction to be used as part of the offense *and* as qualification for punishment" (emphasis in original)).

¶ 41 Tywaun argues that this reading of the statute cannot be reasonable, because a defendant like him "will always be subject to the presumptive sentencing range of 7 to 14 years, rendering meaningless the portion of Section 24-1.1(e) allowing for a sentence of 3-7 years." Not so. Only offenders convicted of UUWF who have been convicted of one of the 26 qualifying predicate offenses listed in section 5-4.5-110(a) will be subject to the presumptive 7 to 14 year sentencing range; all others (who have been convicted of class 2 felonies) will still be subject to the 3 to 14 year sentencing range. Moreover, Tywaun's argument ignores the plain language of section 5-4.5-110(d)(1), which expressly allows the trial court to depart downward from the sentencing

guidelines and sentence a defendant in the three to seven year range, provided it "finds on the record substantial and compelling justification that the sentence within the sentencing guidelines would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and does not deprecate the seriousness of the offense." 730 ILCS 5/5-4.5-110(d)(1) (West 2018).

¶ 42                                    III. CONCLUSION

¶ 43    For the reasons explained above, we find no error here because the evidence was sufficient to convict Tywaun of UUWF and the legislature unambiguously intended to permit double enhancement of his sentence where Tywaun's predicate offense was AUUW. Thus, we affirm the judgment of the circuit court.

¶ 44    Affirmed.

¶ 45    JUSTICE C.A. WALKER, specially concurring:

¶ 46    I concur with the majority regarding the sufficiency of the evidence. Regarding the double enhancement issue, however, I disagree with the majority's analysis. I agree that the legislature intended section 5-4.5-110 (730 ILCS 5/5-4.5-110 (West 2018)) to permit double enhancement, but the plain language of the statute is not clear and unambiguous on its face because the statute does not clearly permit one conviction to both establish an element for UUWF and serve as a "[q]ualifying predicate offense" for extended sentencing. See *id.* § 5-4.5-110(a). Hence, I would find the statutory language is ambiguous and adopt the *Hayward* court's reasoning regarding the legislative intent to apply the 7 to 14 year sentencing range to second-time firearm offenders. See *People v. Hayward*, 2023 IL App (1st) 220360-U, ¶¶ 33-43.

¶ 47    As the *Hayward* court analyzed, the proper mode of interpretation here is that (1) while this court cannot conclude from the language of the statute alone that the legislature intended to permit a double enhancement, (2) that language, when considered alongside the policy goals as outlined in the legislative history, sufficiently establishes the legislative intent to apply the 7 to 14 year sentencing range to defendants with any two firearm convictions such that the high "slightest ambiguity" bar set in *Fitzsimmons v. Norgle*, 104 Ill. 2d 369, 374 (1984), is satisfied.

¶ 48    In concluding that the statutory language is not clear and unambiguous on its face, I emphasize that the statute is silent as to the issue of double enhancement. While the implication of the language is strong, as convincingly stated by the majority in its discussion of the term "shall," I believe this is the type of language that our supreme court has encouraged reviewing courts to exercise significant caution over before permitting a double enhancement. See *id.* This is particularly true here, in light of the body of law regarding double enhancements in the context of armed habitual criminal and UUWF charges. See *People v. Owens*, 377 Ill. App. 3d 302, 304-05 (2007); see also *People v. Rankin*, 297 Ill. App. 3d 818, 822 (1998); *People v. Bahena*, 296 Ill. App. 3d 67, 69-70 (1998). When considering the statutory language alongside the legislative history and context, however, it becomes clear that the legislature fashioned the 7 to 14 year sentencing range to specifically apply to second-time firearm offenders, which dictates the interpretation that the legislature intended to permit a double enhancement for offenders situated as defendant here. The distinction between section 5-4.5-110 (730 ILCS 5/5-4.5-110 (West 2018)), and previous statutory regimes where double enhancements were found improper, is explained in *Hayward*: "*Bahena* and *Owens*, however, were decided before the passing of section 5-4.5-110 and" "do not speak to whether section 5-4.5-110 clearly expresses a legislative intent to allow for

the enhancement of a penalty based on an element of the crime." *Hayward*, 2023 IL App (1st) 220360-U, ¶ 38.

¶ 49    While I agree with the majority's conclusion that the legislature intended to permit double enhancement, I would follow the above reasoning to reach that conclusion.

---

## *People v. Donald*, 2023 IL App (1st) 211557

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-15185; the Hon. Thaddeus L. Wilson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Hannah Lazar Pieterse, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Paul E. Wojcicki, and James J. Stumpf, Assistant State's Attorneys, of counsel), for the People. |

---