2023 IL 128871

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128871)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
SANTANA GRAYER, Appellant.

*Opinion filed December 29, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, and
Cunningham concurred in the judgment and opinion.

Justice Rochford specially concurred, with opinion.

## OPINION

¶ 1        Following a bench trial, the circuit court of Cook County found defendant,
Santana Grayer, guilty of attempted vehicular hijacking (720 ILCS 5/8-4(a), 18-3
(West 2020)). On appeal, defendant challenged the sufficiency of the evidence by
arguing that, due to his state of voluntary intoxication, the State failed to prove

beyond a reasonable doubt that he possessed the specific intent to commit the offense.

¶ 2     A divided appellate court panel affirmed. 2022 IL App (1st) 210808. The majority first found that evidence of voluntary intoxication is no longer relevant to the issue of intent given that the legislature amended section 6-3 of the Criminal Code of 1961 (now the Criminal Code of 2012) (Code) (Pub. Act 92-466, § 5 (eff. Jan. 1, 2002) (amending 720 ILCS 5/6-3)), removing voluntary intoxication as an affirmative defense. 2022 IL App (1st) 210808, ¶ 39. The majority went on to find that, even if voluntary intoxication remained relevant to specific-intent offenses, the evidence failed to establish defendant's state of intoxication was so extreme that he was unable to form the requisite intent. *Id.* ¶ 42. We affirm defendant's conviction and sentence but for different reasons than the appellate court.

¶ 3                                I. BACKGROUND

¶ 4     At a bench trial, the victim, Arnold Ong, testified that on September 6, 2020, he drove his white Honda CRV for the ridesharing service Lyft. At about 6 p.m. he received a notification through the Lyft app with a new ride for a woman named Phyllis. When Ong arrived at the pickup location, he noticed a group of people gathered. Ong spoke to Phylliss, who told Ong that she purchased the ride for defendant. Ong testified that defendant could walk but swayed side to side and that defendant sounded intoxicated when he spoke.

¶ 5     Defendant got into the back seat, and Ong started to drive following the GPS directions from the Lyft app to the drop-off location. Ong did not know if the drop-off location was defendant's house; he just followed the directions on the Lyft app. During the drive, defendant told Ong that he was going the wrong way. Ong told defendant that they were going in the correct direction by following the Lyft app's GPS directions. Defendant raised his voice and told Ong multiple times that he wanted to drive the vehicle himself. Ong refused, and defendant became angry and grabbed Ong's shirt. Defendant also put his right hand on his own waist, which Ong described as "trying to grab something, and I thought it was a deadly weapon." While defendant held onto Ong, he told him, "I'm going to kill you" multiple times. Ong explained, "I was so scared at the time. And then I—that's the time I realized

my life was at stake. So as soon as I found a gas station, I tried to pull over and seek some help from people around me."

¶ 6    Ong pulled into a gas station, picked up the keys to his car and his cell phone, and exited the vehicle as fast as he could to avoid being harmed. Defendant also exited the vehicle and "chas[ed]" Ong around the car. Ong then went inside the gas station to call 911. Defendant stayed outside, next to Ong's vehicle. Ong remained inside the gas station until police arrived, but at one point he stepped outside to check on his vehicle and saw defendant waiving Ong's house keys that he had left inside the car.

¶ 7    Ong spoke with police when they arrived. He did not remember if he told the officers at the gas station that he thought defendant may have a gun or knife. Ong also did not tell the 911 dispatcher that he believed defendant had a weapon. Ong did not recall telling anyone inside the gas station convenience store that he thought defendant had a weapon. However, when Ong later spoke with police again at the police station, he told an officer that he thought defendant had a weapon.

¶ 8    The State submitted surveillance video of the incident from the gas station's security system into evidence. The video shows Ong driving the car into the gas station and parking it next to a gas pump. Ong exits the vehicle first. Defendant then exits the vehicle, and Ong moves toward the front of the vehicle. Ong turns around when defendant also starts walking toward the front of the vehicle. Ong opens the driver's door and picks up his car keys and cell phone and closes the door again when defendant approaches. Ong then started walking toward the back of the vehicle with defendant following him. Ong circles the vehicle once again while defendant follows.

¶ 9    When defendant is standing near the front driver's side, he opens the door and looks at Ong over the top of the vehicle. Defendant stays there while Ong goes inside the gas station convenience store. Defendant then walks around the vehicle and leans against the rear passenger side door. Later, Ong opens the door to the gas station store, but Ong goes back inside when defendant starts walking toward him. Later in the video, defendant is seen standing next to the open driver's door holding Ong's house keys. Defendant is seen shaking the keys toward the convenience store.

¶ 10 About 20 minutes after they arrived at the gas station, defendant enters the vehicle and sits in the driver's seat. Defendant appears to be reaching toward the dashboard with the house keys in his hand, making a turning motion. Defendant repeats this motion several times. He then reclines the seat and lies back until police arrive.

¶ 11 The State rested. Defendant did not present any evidence on his own behalf.

¶ 12 In closing arguments, defense counsel argued, in relevant part, that the State failed to prove the element of specific intent. Although counsel argued that the evidence showed that defendant could not form the specific intent to hijack the vehicle, counsel's reliance on defendant's voluntary intoxication focused on her argument that the evidence showed that defendant merely wanted to go home and was upset by the fact that he believed Ong was not driving in the correct direction.

¶ 13 The State argued that "being drunk isn't an excuse for criminal activity and that's what happened here." According to the State, defendant articulated his intent to take the vehicle from Ong when he asked if he could drive and threatened to kill Ong when Ong refused. Additionally, defendant's actions at the gas station supported a finding of intent given that defendant appeared to taunt Ong with the house keys he found inside the car along with the fact that the State believed the surveillance video showed defendant reach toward the vehicle's ignition in an effort to start the vehicle.

¶ 14 After hearing the arguments, the court noted that there was "evidence of some intoxication" but that the other evidence showed that defendant was aware of his environment, knew different directions, and "knew that to his way of thinking" Ong was driving in the wrong direction. The court concluded that defendant was "not intoxicated as a legal defense." The court found Ong's testimony credible that defendant grabbed the sleeve of Ong's shirt and reached toward his own waistband with his other hand. The court also found that the surveillance video showed that defendant attempted to start the car using Ong's house keys. The court found defendant guilty of attempted vehicular hijacking and sentenced defendant to five years' imprisonment.

¶ 15    On appeal, defendant argued that the State failed to prove beyond a reasonable doubt that he had committed the offense. 2022 IL App (1st) 210808, ¶ 34.[1] Defendant claimed the evidence failed to establish that he possessed the requisite specific intent to commit vehicular hijacking or that he took a substantial step toward the commission of that offense. *Id.* ¶ 32.

¶ 16    On the issue of intent, defendant acknowledged that voluntary intoxication is not an affirmative defense in Illinois. However, defendant argued his voluntary intoxication remained relevant to specific-intent offenses, like attempt. Considering his intoxication, defendant argued that his actions and statements were not indicative of an attempt to steal Ong's car. Instead, the circumstances showed that he pulled on Ong's sleeve to get his attention and that the threats to kill Ong were mere drunken hyperbole.

¶ 17    A majority of a divided appellate court panel framed defendant's argument as "essentially contend[ing] that [defendant] was so intoxicated that he was unable to form the specific intent necessary to commit the offense of attempted vehicular hijacking." *Id.* ¶ 38. The majority rejected the argument on the grounds that voluntary intoxication is no longer a defense, given that the legislature amended section 6-3, removing voluntary intoxication as a defense. *Id.* ¶¶ 38-41. Nevertheless, the majority went on to find that the evidence did not establish that defendant's "intoxication was 'so extreme' as to suspend entirely his power of reasoning." *Id.* ¶ 42. Defendant appeals.

¶ 18                                II. ANALYSIS

¶ 19    In this court, defendant maintains that the evidence is insufficient to prove he had the specific intent to commit attempted vehicular hijacking beyond a reasonable doubt. Before considering the sufficiency of the evidence, we must consider what role—if any—evidence of defendant's voluntary intoxication has in this case. The parties agree that Illinois no longer recognizes the affirmative defense of voluntary intoxication after the legislature's 2002 amendment to section 6-3 of the Code.

---

[1] Defendant also challenged the sufficiency of the evidence that he made a substantial step toward the commission of the crime. Additionally, he argued that his sentence was excessive. He does not raise either argument in this court.

Nevertheless, defendant contends that the amendment to section 6-3 had no impact on either the State's burden of proof or the relevancy of voluntary intoxication evidence at trial when it is offered to negate the State's evidence that defendant had the specific intent to commit the charged offense.

¶ 20    Our review requires this court to interpret section 6-3 of the Code. "The primary objective of statutory construction is to ascertain and give effect to the legislature's intent," which is most reliably indicated by the "plain and ordinary" language of the statute. *People v. Gutman*, 2011 IL 110338, ¶ 12. We may only look to other interpretive aids, such as legislative history, when the statutory language is ambiguous. *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005).

¶ 21    Prior to 2002, section 6-3 provided that an intoxicated or drugged person was

"criminally responsible for conduct unless such condition either:

(a) Is so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-3 (West 2000).

Under this version of section 6-3, a defendant could raise his or her state of intoxication (either voluntarily produced or involuntarily produced) as an affirmative defense. Involuntary intoxication contemplated intoxication induced by some external influence such as trick, artifice, or force but also unexpected and unwarned adverse side effects from medication taken on doctor's orders. *People v. Hari*, 218 Ill. 2d 275, 295 (2006). Voluntary intoxication, which is at issue here, could be raised as an affirmative defense to specific-intent crimes. Raising the defense triggered the State's burden to not only prove the elements of the crime but also to disprove the defense. 720 ILCS 5/3-2(b) (West 2000).

¶ 22    In 2002, the legislature amended section 6-3 to its present form. It now provides that an intoxicated individual "is criminally responsible for conduct unless such condition is *involuntarily* produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) 720 ILCS 5/6-3 (West 2020). Now, a

- 6 -

defendant's state of intoxication can be relied on as an affirmative defense only if it is involuntarily produced. Under the plain and unambiguous language of section 6-3, Illinois no longer recognizes voluntary intoxication as an affirmative defense. See 2022 IL App (1st) 210808, ¶ 39 (citing *People v. Himber*, 2020 IL App (1st) 162182, ¶ 55); *People v. Jackson*, 362 Ill. App. 3d 1196, 1201 (2006); *People v. Rodgers*, 335 Ill. App. 3d 429, 433 n.1 (2002). Therefore, we need not look to the legislative history to ascertain the legislature's intent. *Powell*, 217 Ill. 2d at 135.

¶ 23    However, the amendment to section 6-3 does not mean evidence of voluntary intoxication is barred from being introduced at trial to negate the State's evidence of intent for specific-intent offenses. The amendment had no effect on the State's burden of proving all elements of the charged offense beyond a reasonable doubt, including the requisite mental state. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Attempted vehicular hijacking is a specific-intent offense. Unlike general intent offenses, which only require that the prohibited result be reasonably expected to flow from the accused's voluntary act, specific-intent offenses require the State to prove that a defendant intended to commit the stated offense. *People v. Harris*, 72 Ill. 2d 16, 27-28 (1978). In other words, specific-intent crimes require the State to prove that defendant subjectively desired the prohibited result. *People v. Garland*, 254 Ill. App. 3d 827, 832 (1993); see also *People v. Slabon*, 2018 IL App (1st) 150149, ¶ 33.

¶ 24    Reliance on a defendant's state of voluntary intoxication, therefore, is now a question of admissibility under the Illinois Rules of Evidence, rather than its recognition as an affirmative defense. See generally *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 116 ("Whether a doctrine is recognized as an affirmative defense is an entirely different question from whether certain evidence is admissible to disprove an element of the charged crime under the facts of a particular case."). Evidence is relevant if it tends to make the question of guilt more or less probable. *People v. Rodgers*, 53 Ill. 2d 207, 214-15 (1972). Since there is a subjective component to specific-intent crimes and intoxication affects an individual's subjective mental state, a defendant's state of voluntary intoxication may be one of many relevant circumstances for the trier of fact to consider.

¶ 25    We note that defendant relies on the Illinois Criminal Pattern Jury Instructions to argue evidence of voluntary intoxication remains relevant for specific-intent

crimes because it still contains instructions regarding voluntary intoxication even after the legislature's 2002 amendment. Defendant contends that this court's jury instruction committee agrees that the 2002 amendment to section 6-3 did not change the relevance of voluntary intoxication since the current instructions recognize that a defendant's voluntary intoxication may render him "incapable of forming a specific intent." Illinois Pattern Jury Instructions, Criminal, No. 24-25.02 (approved Dec. 8, 2011) (hereinafter IPI Criminal No. 24-25.02). The committee reviewed the jury instructions after the 2002 amendment to section 6-3 and added the comment to the instructions that "Public Act 92-466, effective January 1, 2002, amended Section 6-3 of the Criminal Code to delete voluntary intoxication or drugged condition as an affirmative defense." IPI Criminal Nos. 24-25.02, Committee Note, and 25.02A, Committee Note (approved July 29, 2016). According to defendant, this means the committee concluded that the instruction did not need to be changed, demonstrating that it determined that the 2002 amendment to section 6-3 had no impact on the relevance of a defendant's voluntary intoxication at trials for specific-intent offenses. As discussed above, we agree that voluntary intoxication remains relevant at trial for specific-intent offenses, but this instruction only applies to charges for offenses that are committed prior to the 2002 amendment to section 6-3.

¶ 26     At the end of the day, the question of defendant's state of mind at the time of the offense is a question for the trier of fact to decide. *People v. Pertz*, 242 Ill. App. 3d 864, 903 (1993). A defendant has the right to both present a defense and defendant's version of the facts to the trier of fact so it may decide where the truth lies. *People v. Manion*, 67 Ill. 2d 564, 576 (1977). Accordingly, although no longer recognized as an affirmative defense, we hold that the legislature's decision to amend section 6-3 does not serve as a categorical bar to presenting evidence of voluntary intoxication as a means of attacking the State's claim that defendant had the requisite specific intent to commit the charged offense.

¶ 27     We now turn to the merits of defendant's sufficiency of the evidence argument. The due process clause of the fourteenth amendment to the United States Constitution requires that a defendant may not be convicted " ' "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." ' " *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004), quoting *In re Winship*, 397

U.S. 358, 364 (1970)). A reviewing court, faced with a challenge to the sufficiency of the evidence, must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson*, 443 U.S. at 319).

¶ 28     To sustain a conviction for attempted vehicular hijacking, the State must first show attempt in that, with the intent to commit a specific offense, a person does any act that constitutes a substantial step toward the commission of that offense. 720 ILCS 5/8-4(a) (West 2020). "A person commits vehicular hijacking when he or she knowingly takes a motor vehicle from the person or the immediate presence of another by the use of force or by threatening the imminent use of force." *Id.* § 18-3(a). In this case, the only issue is whether the State proved that defendant had the specific intent to commit the charged offense. "The intent to commit a criminal offense need not be expressed, but may be inferred from the conduct of the defendant and the surrounding circumstances." *People v. Terrell*, 99 Ill. 2d 427, 431-32 (1984). "Absent direct evidence, intent must be proven circumstantially, and a conviction may be sustained on circumstantial evidence alone." *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 10 (citing *People v. Johnson*, 28 Ill. 2d 441, 443 (1963)).

¶ 29     In this case, Ong testified that defendant believed Ong was not driving in the correct direction and became angry. Defendant grabbed the sleeve of Ong's shirt and asked Ong to let him drive. When Ong refused and told defendant they were following the directions on the GPS, defendant threatened to kill Ong several times. Although Ong never testified that he believed defendant would steal his car, a specific demand is not required if the circumstances are sufficient to show intent. Defendant's threats caused Ong to fear for his life given that Ong observed defendant reach for his waistband, under which Ong thought could be a dangerous weapon. This caused Ong to pull the car into the gas station, abandon his car, and retreat inside the gas station convenience store to call 911. Given this, we find the evidence is sufficient to establish defendant had the specific intent to commit the offense by making a threat of imminent force while asking to take control of Ong's vehicle, notwithstanding defendant's state of voluntary intoxication.

¶ 30    Defendant challenges this conclusion by arguing that defendant's intent of pulling Ong's sleeve was based on his belief that Ong was driving him in the wrong direction and that his threats to kill Ong were "mere drunken hyperbole." We acknowledge that a reasonable person believing his Lyft driver is not taking him to the correct destination would be terrifying, especially when the person is under the influence. 2022 IL App (1st) 210808, ¶ 61 (Gordon, P.J., dissenting). However, defendant mistakenly focuses on the reason why he tried to take Ong's car by force, but it does not matter why defendant intended to take Ong's car by force. Attempted vehicular hijacking only requires an intent to take a vehicle by force or threat of imminent force. Moreover, defendant never raised a self-defense or necessity claim to excuse his actions.

¶ 31    Defendant also relies on his conduct after Ong parked the car to argue that his threats were not evidence of intent to commit vehicular hijacking. In defendant's view, his conduct at the gas station was consistent with an intoxicated individual wanting to go home and not that of a person who just tried to steal a vehicle. Defendant points out that he waited outside the vehicle for five minutes before he opened the car and found Ong's house keys. He also did not get into the driver's seat until 20 minutes had passed since arriving at the gas station. Defendant also believes that his act of shaking the keys in Ong's direction supports an inference that defendant wanted Ong to complete the drive. Further, the surveillance video supports multiple inferences, including an inference that he was adjusting the radio, rather than attempting to start the vehicle. Finally, defendant ultimately appeared to fall asleep in the driver's seat.

¶ 32    We reject this argument. The State was not required to exclude every reasonable alternative explanation consistent with defendant's innocence (*People v. Larson*, 379 Ill. App. 3d 642, 654 (2008)), and the trier of fact was free to reject these hypothetical alternative explanations for his actions that day. Our review under the sufficiency of the evidence standard requires this court to draw all reasonable inferences in favor of the State. *People v. Gonzalez*, 239 Ill. 2d 471, 478 (2011). Under this standard it is reasonable for the trier of fact to conclude that defendant's actions outside the gas station convenience store were consistent with an intent to commit the offense of attempted vehicular hijacking. Defendant did not leave the scene after Ong parked at the gas station. Instead, he followed Ong around the vehicle. Ong reached into the vehicle to retrieve his car keys and cell phone. After

Ong fled to the gas station convenience store, defendant stood between the vehicle and the convenience store, effectively blocking Ong's path back to his vehicle. Ong attempted to exit the store but retreated when defendant started walking toward him. Defendant eventually accessed the driver's door and found a set of keys, which he held up and shook in Ong's direction. Given that he may have believed he possessed the keys to Ong's vehicle, it is reasonable to conclude that defendant taunted Ong by shaking the keys in his direction. While it is possible to infer defendant only intended for Ong to complete the trip, that conclusion is rebutted by the fact that defendant chose to get into the driver's seat of the vehicle, rather than return to the passenger's seat. Consequently, we conclude the evidence is sufficient regardless of whether the surveillance video supports either an inference that defendant attempted to start the vehicle or an inference that defendant attempted to use the radio when seated in the driver's seat.

¶ 33                                III. CONCLUSION

¶ 34        For the foregoing reasons, we hold that Illinois does not recognize the affirmative defense of voluntary intoxication, but evidence of voluntary intoxication, when relevant and admissible, may be considered by the trier of fact when determining whether the State has proven that defendant had the requisite mental state for specific-intent offenses. We further hold that the evidence in this case is sufficient to prove defendant committed the offense of attempted vehicular hijacking beyond a reasonable doubt. Accordingly, we affirm defendant's conviction and sentence.

¶ 35        Judgments affirmed.

¶ 36        JUSTICE ROCHFORD, specially concurring:

¶ 37        I agree with my colleagues that the evidence was sufficient to support defendant's conviction of attempted vehicular hijacking, and I therefore concur in the judgment. I disagree with the majority's conclusion that defendants in Illinois may use evidence of voluntary intoxication to negate specific intent. The appellate court correctly determined that section 6-3 of the Criminal Code of 2012 (Code)

- 11 -

(720 ILCS 5/6-3 (West 2020)) does not allow a defendant to use evidence of voluntary intoxication to negate specific intent. 2022 IL App (1st) 210808, ¶¶ 37-42.

¶ 38    This question is answered by section 6-3's plain language, which is clear on this point:

> "§ 6-3. Intoxicated or drugged condition.
>
> *A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless* such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) 720 ILCS 5/6-3 (West 2020).

Defendant argues that he is not guilty because his voluntary intoxication prevented him from forming the specific intent required to convict him of attempted vehicular hijacking. This is of no moment because section 6-3 states that he is *criminally responsible for conduct* unless the intoxication was *involuntarily* produced.

¶ 39    Thus, the statute does more than provide an affirmative defense of involuntary intoxication. It specifically states that, where the affirmative defense is not available, an intoxicated person is criminally responsible for conduct. Therefore, it is incorrect to say that a defendant may use evidence of voluntary intoxication to establish that he was *not* criminally responsible. The majority's holding that a defendant's voluntary intoxication is relevant to whether he had the specific intent to commit a crime (*supra* ¶ 24) is contrary to section 6-3's plain language. Section 6-3 makes evidence of voluntary intoxication *irrelevant* in determining a defendant's criminal responsibility.

¶ 40    A brief review of how section 6-3 has evolved over the years shows that the legislature no longer intends for voluntary intoxication to be a defense to specific-intent crimes. As originally enacted, section 6-3 provided:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Negatives the existence of a mental state which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1963, ch. 38, ¶ 6-3.

As one commentator has noted, this statute abolished the common-law distinction between general- and specific-intent crimes and went even further than the Model Penal Code in that it would have allowed intoxication to negate *any* mental state, including recklessness. See Timothy P. O'Neill, *Illinois' Latest Version of the Defense of Voluntary Intoxication: Is It Wise? Is It Constitutional?*, 39 DePaul L. Rev. 15, 25 (1989). However, the Illinois courts would be slow to recognize the sweep of this language, and some would still draw a distinction between general-intent and specific-intent crimes. *Id.* at 26-29.

¶ 41    In 1988, however, the legislature amended the statute to bring back the distinction between crimes of general and specific intent:

"§ 6-3. Intoxicated or drugged condition. A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Is so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense; or

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) 720 ILCS 5/6-3 (West 2000).

Under this version of the statute, voluntary intoxication was a defense only to specific-intent crimes.

¶ 42    Finally, in 2001, the legislature amended the statute to its current form, completely eliminating voluntary intoxication as a defense. And yet, the majority holds that the effect of the legislature *eliminating* the ability of a defendant to use

evidence of voluntary intoxication to negate specific intent is that defendants may *still* use evidence of voluntary intoxication to negate specific intent. *Supra* ¶ 23.

¶ 43 According to the majority, the legislature's intent with the 2001 amendment was to make a minor procedural change. The majority concludes that the legislature's intent was simply to eliminate voluntary intoxication as an affirmative defense but to still allow defendants to use evidence of voluntary intoxication to negate the intent element of specific-intent crimes. *Supra* ¶ 23. I find this conclusion unconvincing for several reasons. First, the statute was already couched in terms of negating specific intent. The previous version of the statute would have allowed evidence of voluntary intoxication to negate the intent element of specific-intent crimes. But the legislature eliminated this provision in its entirety.

¶ 44 Second, any procedural distinction between voluntary intoxication negating specific intent being an affirmative defense or merely an evidentiary question is minor. As the majority notes, if it is an affirmative defense, the State would have had to disprove the defense beyond a reasonable doubt. *Supra* ¶ 21. The State would do so by proving beyond a reasonable doubt that, in spite of evidence of defendant's voluntary intoxication, he had the requisite specific intent to commit the offense. If it is *not* an affirmative defense but merely an evidentiary matter, the State would still have to prove beyond a reasonable doubt that a defendant had the requisite specific intent despite his voluntary intoxication. In either scenario, the State would be required to prove beyond a reasonable doubt, in the face of evidence of voluntary intoxication, that a defendant had the specific intent required to commit the offense. For instance, assume that this case had been tried under the previous version of the statute and defendant had asserted voluntary intoxication as an affirmative defense. Would this court's analysis look any different? Presumably, this court would have reviewed the evidence and concluded, as it does here, that the evidence was sufficient to establish defendant's specific intent to commit the offense notwithstanding defendant's state of voluntary intoxication. See *supra* ¶ 29. Any difference between voluntary intoxication negating specific intent being an affirmative defense or an evidentiary matter is so negligible that one wonders why the legislature would even bother making such a change.

¶ 45 Third, it is reasonable to assume that, if the legislature intended what the majority believes that it did—that defendants could still use evidence of voluntary

intoxication to negate specific intent but that it is not an affirmative defense—the legislature would have amended section 6-4 instead of section 6-3. Article 6 of the Code is titled "Responsibility." *Id.* art. 6. Section 6-4 provides that a defense based on a provision of article 6 is an affirmative defense, but it then provides an exception for mental illness:

> "Affirmative Defense. A defense based upon any of the provisions of Article 6 is an affirmative defense *except that mental illness is not an affirmative defense*, but an alternative plea or finding that may be accepted, under appropriate evidence, when the affirmative defense of insanity is raised or the plea of guilty but mentally ill is made." *Id.* § 6-4.

The legislature could have left subsection (a) of the previous version of section 6-3 (720 ILCS 5/6-3(a) (West 2000)) intact but then provided in section 6-4 that voluntary intoxication under section 6-3(a) is not an affirmative defense. But this is not what the legislature did. The legislature eliminated the provision allowing defendants to use evidence of voluntary intoxication to negate specific intent and provided that, in circumstances in which the affirmative defense of involuntary intoxication is not available, an intoxicated defendant is *criminally responsible for conduct*.

¶ 46   One can certainly make a reasonable argument that defendants should be allowed to use evidence of voluntary intoxication to negate any mental state. Absent constitutional concerns, however, we are obligated to enforce the statute as written whether we agree with the legislature's choice or believe that it is wise.[2] The legislature has clearly and unequivocally stated that an intoxicated defendant is criminally responsible for conduct unless the affirmative defense of involuntary intoxication is available. The appellate court correctly concluded that section 6-3 no longer allows defendants to use evidence of voluntary intoxication to negate specific intent. 2022 IL App (1st) 210808, ¶¶ 37-42. I therefore concur in the majority's judgment affirming defendant's conviction, but I disagree with the

---

[2]Defendant has not raised any arguments about the statute's constitutionality. In *Montana v. Egelhoff*, 518 U.S. 37 (1996), the United States Supreme Court upheld the constitutionality of a Montana statute providing that evidence of a defendant's intoxicated condition could not be considered in determining a mental state that is an element of an offense.

majority's holding that defendants in Illinois may use evidence of voluntary intoxication to negate the intent element of specific-intent crimes.