2024 IL App (1st) 230512-U

No. 1-23-0512

Order filed November 15, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 14364 |
| | ) | |
| TYREE BROWN, | ) | Honorable |
| | ) | Michael J. Hood, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Evidence was sufficient to convict defendant of unlawful use or possession of a weapon by a felon (UUWF). Court did not err in imposing 10 years' imprisonment when defendant's prior conviction for armed robbery triggered a statutory range of 7 to 14 years' imprisonment for UUWF.

¶ 2    Tyree Brown was convicted of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to 10 years' imprisonment. On appeal, Brown contests (i) the sufficiency of the evidence where the weapon was not entered into evidence and (ii) his sentence because a prior

armed robbery that he committed at age 17 could have resulted in a juvenile adjudication rather than an adult conviction had the offense occurred now and, therefore, should not have triggered the statutory range of 7 to 14 years' imprisonment for UUWF.

¶ 3　We affirm. Although the firearm was not introduced into evidence, testimony and video descriptions supported a reasonable inference of constructive possession. Regarding the sentence, we adhere to *People v. Wallace*, 2023 IL App (1st) 200917, *appeal allowed*, No. 130173 (Ill. 2024), where the court held that the amendment relied on by Brown cannot be read into section 5-4.5-110 of the Code of Corrections (730 ILCS 5/5-4.5-110 (West 2020)), which, like the armed habitual criminal statute, refers to past convictions for predicate offenses.

¶ 4　　　　　　　　　　　　　　　　Background

¶ 5　Brown was charged with UUWF (720 ILCS 5/24-1.1 (West 2020)) for knowingly possessing a firearm, having been convicted of an armed robbery.

¶ 6　At trial, Chicago police officer Kenneth Sunde testified that he and Officer Tyler Thomas were on patrol in a marked squad car on September 20, 2019. Sunde saw a car fail to use its turn signal and pulled it over. The officers approached, with Sunde on the passenger side. Sunde observed Brown, whom he identified at trial, in the front passenger seat. Brown held a cup and informed Sunde that it contained alcohol, and admitted he had been drinking. Brown said a cooler on the floorboard between his legs contained more alcohol.

¶ 7　Sunde asked Brown to get out of the car. Brown initally challenged Sunde's request before complying. As Brown got out, Sunde "observed a pistol in plain view between the passenger side seat and the frame of the door," positioned directly beside the seat. Sunde placed Brown against the car, but Brown fled. Sunde briefly chased Brown before returning to secure and recover the

pistol. Officer Thomas continued pursuing Brown, who was ultimately arrested. Sunde cleared the firearm, a loaded .40-caliber semiautomatic pistol.

¶ 8     Sunde had worn a camera and reviewed the video before trial. The video was admitted into evidence without objection and published, although not part of the record on appeal. As the video played, the State paused it at 3 minutes and 16 seconds to question Sunde about a still image. Sunde indicated that the pistol appeared "basically just right underneath where his hand is in the still frame, but on the floor of the vehicle," pointing to an area that the court described as "just below where [Brown's] right hand is."

¶ 9     On cross-examination, Sunde noted that Samantha Brown, the driver, was briefly left alone in the car until he returned after running about 15 feet. After Sunde recovered the firearm, Samantha Brown drove away, so the car was not searched. Sunde inventoried the firearm at the police station, but did not see Brown touch it and was unaware if it was tested for fingerprints or DNA.

¶ 10    The State presented a certified copy of Brown's armed robbery conviction, which was admitted into evidence without objection. The certified copy from Peoria County reflects that Brown was indicted for armed robbery with a firearm on December 20, 2006. In June 2007, he pled guilty and received a nine year sentence.

¶ 11    Brown testified that he and Samantha Brown had been at his brother's home that night for a celebration. Brown had driven there, but Samantha Brown drove home because Brown "had numerous drinks." When he entered the car to leave, he did not see a firearm between the seat and the door. The police stopped their car, and Brown acknowledged to drinking alcohol. When Sunde told him to get out, he complied, but Sunde told him not to move and said, "Gun." Brown then

fled. After his arrest, Brown voluntarily submitted a DNA sample. On cross-examination, he acknowledged questioning why Sunde was ordering him out of the car.

¶ 12    After arguments, the trial court found Brown guilty of UUWF, accepting Sunde's testimony as credible and corroborated by the video, which showed Brown in the car with the firearm "inches from his thigh" where it "defies logic" that he could be have been unaware of it. The court found that Brown was reluctant to get out of the car because he knew about the firearm and did not "want to get out of that car."

¶ 13    In his posttrial motion, Brown challenged the sufficiency of the evidence, arguing there was no evidence he owned the car, had constructive possession of the firearm, had handled the firearm, or intended to exercise dominion or control over it. The court denied the motion.

¶ 14    Brown filed a sentencing memorandum acknowledging that he was eligible for sentencing under section 5-4.5-110 of the Code of Corrections (Code) (730 ILCS 5/5-4.5-110 (West 2020)), governing the sentencing of firearms offenses, including UUWF. He noted that his criminal history included an armed robbery conviction. Brown argued that the statute authorized the court to exercise discretion "if it believes that the sentencing range would be unduly harsh" and that a shorter sentence would be consistent with public safety and not diminish the seriousness of the offense. He requested a 3-year prison sentence.

¶ 15    The presentencing investigation report (PSI) stated that Brown, born on January 13, 1989, had a 2005 juvenile adjudication for aggravated battery with two years of probation, a 2007 armed robbery conviction resulting in nine years of imprisonment, and conditional discharge for misdemeanors, including for three offenses of resisting a peace officer in 2015, 2016, and 2017.

According to the PSI and the certified copy of Brown's armed robbery conviction, he was 17 years old when he committed that offense.

¶ 16    The trial court imposed a 10-years prison sentence after a hearing. Brown moved for reconsideration, noting that he was 17 years old when he the committed armed robbery. He argued that if "he would have been 17 years old and charged with armed robbery today, he would have never been prosecuted as an adult," but "this would have been a juvenile conviction under Public Act 99-258," which would not constitute a qualifying offense. He relied on cases involving the Code's Class X sentencing provision (730 ILCS 5/5-4.5-95(b) (West 2016)). The trial court denied his sentence because Brown had been sentenced under a different section of the Code, section 5-4.5-110.

¶ 17                                        Analysis

¶ 18                              *Sufficiency of the evidence*

¶ 19    Brown first contends that the evidence was insufficient to convict him of UUWF because the weapon was not entered into evidence.

¶ 20    In evaluating a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational fact-finder could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Gray*, 2024 IL 127815, ¶ 20. We draw all reasonable inferences in favor of the State, and the State is not required to exclude every reasonable alternative explanation that could support the defendant's innocence. *People v. Grayer*, 2023 IL 128871, ¶ 32. The fact-finder need not disregard inferences that generally arise from the evidence. *People v. Bush*, 2023 IL 128747, ¶ 33. We set aside a

conviction when the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 21    The fact-finder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. *People v. Conway*, 2023 IL 127670, ¶ 20. We will not retry the defendant or substitute our judgment for that of the fact-finder regarding the weight of evidence or witness credibility. *Id.* ¶ 16. The fact-finder may accept or reject all or part of a witness's testimony. *Bush*, 2023 IL 128747, ¶ 36. The intent to commit a criminal offense does not need to be explicitly stated; it can be inferred from the defendant's conduct and the circumstances. *Grayer*, 2023 IL 128871, ¶ 28. A conviction may be sustained on circumstantial evidence alone. *Id.*

¶ 22    A person commits UUWF when he or she knowingly possesses a firearm having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2020). Knowing possession may be actual or constructive. *People v. Donald*, 2023 IL App (1st) 211557, ¶ 24. Constructive possession occurs when a person does not have actual, personal, or immediate control over the firearm, but has knowledge of its presence and control over the area where it is located. *Id.* Knowledge may be inferred from circumstantial evidence and can be proven entirely circumstantially. *Id.* A defendant's presence where a firearm is found is insufficient; there must be evidence that the defendant controlled the firearm or the area where it was found. *Id.* Eyewitness testimony that the defendant possessed a firearm and the circumstances under which the witness viewed the object at issue suffices to allow a reasonable inference that the object was a firearm. *People v. Mitchem*, 2019 IL App (1st) 162257, ¶ 24. Thus, the State is not required to present a firearm for the fact-finder to conclude that the defendant possessed one. *Id.*

¶ 23 Brown maintains that "[t]his is a constructive possession case where [he] testified that he did not know the gun was there" and asserts that "[s]ince there is no video of the weapon nor was a weapon ever introduced into evidence this court should vacate the conviction and dismiss this cause of action." He cites no case law for the proposition that a firearm must be entered into evidence to prove UUWF. See Ill. S. Ct. R 341(h)(7) (eff. Oct. 1, 2020) (citations to legal authority must support arguments). To repeat, the State need not present a firearm for the fact-finder to conclude that the defendant possessed one. *Mitchem*, 2019 IL App (1st) 162257, ¶ 24.

¶ 24 The evidence showed that Brown was hesitant to leave the car. Once he complied, Sunde saw a firearm located between the front passenger seat and the door. While the record on appeal lacks the body-camera video, the trial court described the video as showing the firearm just below Brown's hand. See *In re Julie M.*, 2021 IL 125768, ¶ 61 (appellant must provide complete record on appeal; questions arising from incomplete record are resolved against appellant). After a brief chase of about 15 feet after Brown's fled, Sunde returned to the car and recovered the firearm. He later inventoried it at the police station. Sunde testified that the firearm was a loaded .40-caliber semiautomatic pistol.

¶ 25 Under these circumstances, a rational trier of fact could reasonably infer that Brown had knowledge of and control over a firearm close to his hand and somewhat out of reach of the driver. As the fact-finder, the trial court was not required to elevate Brown's testimony to the level of reasonable doubt. Accordingly, we do not find the evidence of Brown's knowing possession of a firearm so unsatisfactory that it raises reasonable doubt of his guilt.

¶ 26                                          *Sentence*

¶ 27    Brown also argues error regarding his 10-year prison sentence. He maintains that his armed robbery committed at age 17 could have resulted in a juvenile adjudication rather than an adult conviction had the offense occurred now and, thus, should not have triggered the statutory range of 7 to 14 years imprisonment for UUWF.

¶ 28    When Brown committed armed robbery in 2006 at age 17, the case resulted in a conviction in criminal court. In 2014, the legislature expanded juvenile delinquency jurisdiction to 17-year-olds (see Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)) and, in 2016, amended section 5-130(1)(a) of the Juvenile Court Act of 1987 (Act), to, among other things, eliminate armed robbery with a firearm from the list of automatic transfer offenses (see Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a))).

¶ 29    UUWF is a Class 3 felony with a prison term of 2 to 10 years or a Class 2 felony with a prison term of 3 to 14 years if committed by a person previously "convicted of a forcible felony," including armed robbery. 720 ILCS 5/2-8, 24-1.1(e) (West 2020).

¶ 30    At the time of Brown's present offense, a person convicted of UUWF "when the weapon is a firearm, and that person has been previously convicted of a qualifying predicate offense" was subject to 7 to 14 years imprisonment, "unless the court finds that a departure from the sentencing guidelines under this paragraph is warranted under subsection (d) of this Section." 730 ILCS 5/5-4.5-110(c)(1) (West 2020). Armed robbery is a qualifying predicate offense. *Id.* § 5-4.5-110(a)(I). The court could make a sentencing departure if it found "substantial and compelling justification that the sentence within the sentencing guidelines would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and does not deprecate the seriousness of the offense." *Id.* § 5-4.5-110(d)(1).

¶ 31    Brown relies on *People v. Miles*, 2020 IL App (1st) 180736 and *People v. Stewart*, 2022 IL 126116 to argue that he does not have the predicate conviction for the sentencing range of 7 to 14 years under section 5-4.5-110 because his armed robbery conviction might have resulted in a juvenile adjudication had it been committed now.

¶ 32    *Miles* concerned mandatory Class X sentencing, under which a defendant over the age of 21 convicted of a Class 1 or Class 2 felony must receive a Class X sentence if he or she was twice convicted " 'of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony.' " *Miles*, 2020 IL App (1st) 180736, ¶ 5 (quoting 730 ILCS 5/5-4.5-95(b) (West 2016)). The *Miles* defendant was convicted of a burglary in 2016, having been convicted in 2006 of a 2005 armed robbery and aggravated vehicular hijacking with a firearm committed when he was 15. He also had been convicted of a controlled substance offense in 2014. *Id.* ¶¶ 2-3.

¶ 33    The *Miles* defendant, like Brown, claimed that amendments to the Act that took effect after the 2006 conviction but before his present offense meant that his 2006 conviction was not "an offense now [on June 9, 2016] classified in Illinois as a Class 2 or greater Class felony." *Id.* ¶¶ 5-7. Instead, "it is an offense that on June 9, 2016, would have been resolved with delinquency proceedings in juvenile court and would not have been subject to criminal laws." *Id.* ¶ 7. This court agreed "that because his 2006 conviction, had it been committed on June 9, 2016, would have been resolved with delinquency proceedings in juvenile court rather than criminal proceedings, it is not 'an offense now *** classified in Illinois as a Class 2 or greater Class felony' and, therefore, is not a qualifying offense for Class X sentencing." *Id.* ¶ 11.

¶ 34   In *Stewart*, our supreme court held that a defendant's burglary conviction at age 17 was not a qualifying offense for mandatory Class X sentencing. The *Stewart* court found that legislation had "clarified that the General Assembly did not intend for convictions of juveniles in adult court to be considered qualifying offenses for Class X sentencing." *Stewart*, 2022 IL 126116, ¶ 18. "Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(b)(4) *** to provide that the first qualifying offense for Class X sentencing must have been 'committed when the person was 21 years of age or older.' " *Id.* ¶ 19. The supreme court held that the *Stewart* defendant's "2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of section 5-4.5-95(b) of the Code." *Id.* ¶ 22.

¶ 35   Neither *Miles* nor *Stewart* governs here because the Class X sentencing statute at issue in *Miles* and *Stewart* differs from section 5-4.5-110 of the Code. *Miles* rested on the "now ***
classified as" language in the Class X sentencing statute (730 ILCS 5/5-4.5-95(b) (West 2016)), which has no equivalent in section 5-4.5-110. *Stewart* rested on the Class X sentencing statute's provisions that a defendant's first qualifying offense must have been committed when he or she was at least 21 years old, the second qualifying offense must have been committed after the first conviction, and the offense receiving a Class X sentence must have been committed after the second conviction. 730 ILCS 5/5-4.5-95(b)(2)-(4) (West 2020). While the Class X sentencing statute requires that a defendant's first qualifying offense be committed no earlier than age 21, section 5-4.5-110 does not contain this requirement.

¶ 36   We find instructive *People v. Wallace*, 2023 IL App (1st) 200917, *appeal allowed*, No. 130173 (Ill. 2024). The defendant in *Wallace*, citing *Stewart,* raised a claim similar to that of Brown, although under the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2018)).

*Id.* ¶ 32. In *Wallace*, the defendant argued that he committed the armed robbery with a firearm at age 17, and any resultant guilty finding would now be considered a juvenile adjudication rather than a conviction. *Id.* In *Wallace*, as here, the "defendant committed the predicate offense of armed robbery \*\*\* at age 17, and the guilty finding for that offense resulted in a conviction in adult criminal court (not juvenile court). Later, in 2014, the legislature amended the [Act] so that an armed robbery offense committed at age 17 would result in only a juvenile adjudication." *Id.* ¶ 35.

¶ 37 The *Wallace* court held that amendment to the armed habitual criminal statute was not retroactive. *Id.* The language of the armed habitual criminal statute referenced past convictions for predicate offenses and the armed robbery was a forcible felony at the time the defendant was convicted in both the armed robbery and 2019 when the armed robbery was used as a predicate offense to an armed habitual criminal charge. *Id.*; see also *People v. Hawthorne*, 2024 IL App (1st) 220127, ¶¶ 21-43 (rejecting similar challenge under armed habitual criminal statute).

¶ 38 We follow *Wallace* and conclude that the amendment relied on by Brown cannot be read into section 5-4.5-110, which, like the armed habitual criminal statute, refers to past convictions for predicate offenses. Just as in *Wallace*, Brown committed armed robbery when he was 17 years old and received an adult criminal conviction. Whether his case now would be criminal or juvenile does not change the language of section 5-4.5-110, which expressly includes previous convictions for armed robbery among its qualifying predicate offenses.

¶ 39 Affirmed.